442 P.2d 926

**Nick CHOURNOS, Plaintiff and Appellant,**

**v.**

**Lester BELL, D. B. Stringham, Arlen Bell and Melvin Brown, Defendants and Respondents.**

**No. 11079.**

Supreme Court of Utah.

June 25, 1968.

Milton A. Oman, H. James Clegg, Reed L. Martineau, Salt Lake City, for plaintiff and appellant.

LeVar E. Stark, Ogden, for defendants and respondents.

HENRIOD, Justice:

Appeal from a judgment in a trespass action tried to the court without a jury. Affirmed, no costs awarded.

Plaintiff, for more than 30 years has been the owner of extensive mountain lands used to raise sheep. The land abuts federal forest reserve lands, all of which abound in wildlife,—deer, elk, birds and other game,—periodic targets of hunters licensed by the state, four of whom are the defendants here. They represent but a small segment of a perennially increasing number, that now, according to the testimony, can be counted in many hundreds and probably in the thousands,—and more to come.

This is the kind of case that is typically representative of the past and sure-to-come, endlessly provocative vendetta between Hatfield stockmen and the McCoy sportsmen. The interests of both must be recognized by modern, progressive society,—but no umpire that I have heard of has succeeded in this "game" of "run-sheep-run." Mr. Chournos apparently welcomes the encounter, since he is no newcomer to this court, having been a litigant here in nine appeals involving his domain and proprietary interests,[1] either as appellant or respondent. The defendants, on the other hand, seem not to have been enamored greatly of the dove of peace, since, after having been warned by word of mouth, by newspapers, by no-trespassing and hunting signs, one of which was hung on a chain placed across the approach to Davenport Road, by Mr. Chournos, simply bypassed the latter on Mr. Chournos's land. It can be said that they ignored this variety of warnings, after the Fish and Game Department and the Forest Reserve people in a

1. Nos. 5918, 6092, 6429, 6595, 7317, 7983, 10607 and 11079 this court.

bit of innocent practice of law without a license, assured them that the roads or trails,—whatever you choose to call them,—were dedicated to public use. The trial court confirmed them as to the Davenport Road, but not as to the Buck Springs Road.

■ There. is substantial, competent evidence in the record to support the· trial court's findings, in this, a strictly fact case, although some of the facts were subject to some controversion. Under such circumstances generally we sustain the trial court. We might add that with respect to the Davenport Road, the evidence, if believed, would charge it with a public use, over a period of time far greater than the conventional 20-year prescription right requirement, extending to a period long prior to the acquisition by Chournos of his realty holdings. Although not solely controlling it is at least significant that on an official platted and recorded map of the area, Davenport "Road" or "Trail" was noted, reflecting a known usage for animal and vehicular travel. It would seem that some of plaintiff's own evidence supported such a conclusion. True, some of the evidence indicated temporary interruptions of usage due to flooding, erosion and the like, but there is nothing to establish abandonment, statutorily or otherwise.

■ On the other hand, the record seems to reflect that the Buck Springs Road strictly was Chournos's creation, taking on the aspect of privacy, punctuated only on occasion by a permissive use. In upholding the trial court's decision in this respect, defendants' cross-appeal becomes impotent.

Without detailing any further facts, we refer to the trial court's rather comprehensive findings and conclusions, which we believe fairly reflect the facts shown in the record, which findings we approve.

CROCKETT, C. J., and CALLISTER, TUCKETT, and ELLETT, JJ., concur.